In the Matter of PENN CENTRAL
TRANSPORTATION COMPANY,
Debtor.

In re INTERLINE PAYMENTS.

No. 70–347.

United States District Court,
E. D. Pennsylvania.

Aug. 12, 1975.

James E. Howard, Philadelphia, Pa., for the trustees, Penn Central Transp. Co.

Sullivan & Worcester, by Morris Raker, Boston, Mass., and Gratz, Tate, Spiegel, Ervin & Ruthrauff, by Wilbur Bourne Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, Trustee, New York, New Haven & Hartford R.R. Co.

Clark, Ladner, Fortenbaugh & Young, by W. Charles Hogg, Jr., and Edward C. Toole, Jr., Philadelphia, Pa., for Committee of Interline Railroads.

Ballard, Spahr, Andrews & Ingersoll, by Lewis A. Grafman, Philadelphia, Pa., for Girard Trust Bank and indenture trustees.

Jerome E. Sharfman, Washington, D. C., for United States Dept. of Transp.

James F. Dausch, Washington, D. C., for the United States.

## MEMORANDUM AND ORDER

### NO. 1989

FULLAM, District Judge.

In *In re Central Railroad of New Jersey,* 392 F.2d 589 (3d Cir. 1968), the Court of Appeals affirmed a district court decision, 273 F.Supp. 282 (D.N.J. 1967) which held that pre-reorganization freight charges were not trust funds. In reliance upon that decision, I earlier held, *In the Matter of Penn Central Transportation Co.,* 340 F.Supp. 857 (E.D.Pa.1972), *inter alia,* that amounts due from Penn Central to other carriers for prebankruptcy freight and passenger balances could properly be deferred by the Trustees, and could not be set off against post-bankruptcy balances due Penn Central. However, the Court of Appeals, sitting *en banc,* overruled the *Central of New Jersey* decision, and held that the balances due other carriers for freight and passenger service are indeed trust funds. *In re Penn Central Transportation Co., Appeal of Indiana Harbor Belt R.R. Co.,* 486 F.2d 519 (3d Cir. 1973). The Court stated:

> "The principal problem before us is one of accounting for funds belonging to another, readily resolvable by recognized trust and pragmatic considerations . . . .. These principles are appropriate to any industry, regardless of their operational problems, and our decision supports the congressional policy encouraging interline rail transportation of freight and passengers nationwide. . . ."
> (486 F.2d at 527.)

And again:

> "The freight and passenger claims are entitled to different treatment because of their trust character and the

Interlines' resulting right, to payment regardless of the reorganization." (486 F.2d at 529, 530)

In consequence, I thereafter approved a settlement agreement pursuant to which the Trustees have been liquidating the prebankruptcy freight and passenger balances in question in installments, at the rate of approximately $303,000 per month (Order No. 1646). The actual payment is accomplished in a rather complicated way, by means of adjustments in the statements of and drafts for current interline payments. Neither the Government nor any other party appealed from Order No. 1646, and the cash projections which were presented to congressional committees in connection with the 1975 amendments to the RRRA, and which presumably furnished a basis for Congress' conclusions as to the amount of additional funds which would be needed to keep the railroads operating until conveyance pursuant to the Final System Plan, were based upon assumed continuation of these installment payments.

The Government has now petitioned for an order directing the Trustees to cease making these installment payments. In large measure, the Government relies upon an unpublished *per curiam* opinion by the Third Circuit Court of Appeals, again involving the CNJ, *In re Central Railroad Company of New Jersey*, 521 F.2d 635 (3d Cir. 1975), in which the Court remanded to the district court for further consideration a somewhat similar petition.

I have some doubt as to whether it would be proper for me to depart from the "law of the case" previously established by the Court of Appeals in the Penn Central litigation, in reliance upon an unreported decision which, as I understand the internal operating rules of the appellate court, is not deemed to have precedential value. However, I have carefully considered the present case in light of the criteria suggested by the Court of Appeals in the unreported decision referred to, and am not per-suaded that the Government's petition should be granted. Continuation of the present arrangement poses no threat to continuation of the Debtor's rail service. Indeed, the total amount involved is so small in comparison to the total picture that the aggregate amount of such payments accruing between now and next March would not defray the expense of operating the Debtor's railroad for even one day. Moreover, I agree with the analysis of Judge Ditter in considering a similar petition in the Reading proceedings, and concur in the conclusions there expressed. *In the Matter of Reading Company, Debtor*, 398 F.Supp. 280 (E.D.Pa.1975).

For all of these reasons, the petition will be denied.