**John WILLIAMS, Appellant,**

v.

**Harold V. FIELD, etc., Appellee.**

**No. 23299.**

United States Court of Appeals
Ninth Circuit.

Sept. 29, 1969.

Rehearing Denied Nov. 14, 1969.

John Williams, in pro. per.

Thomas C. Lynch, Atty. Gen., William E. James, Asst. Atty. Gen., Jack K. Weber, Robert P. Samoian, Deputy Attys. Gen., Los Angeles, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and SMITH, District Judge.*

HAMLIN, Circuit Judge.

Appellant Williams, an inmate of a California prison, brought suit in the United States District Court for the Central District of California under 42 U.S.C. § 1983, alleging that prison officials, acting under color of state law, deprived him of rights guaranteed by the Constitution. On motion of appellee under Rule 12(b) (6), F.R.Civ.P., the district court dismissed the suit for failure to state a claim under section 1983. Jurisdiction on appeal is properly lodged under 28 U.S.C. § 1291. Viewing appellant's allegations in the light most favorable to him, United Milk Products Co. v. Lawndale National Bank of Chicago, 392 F.2d 876 (7th Cir. 1968), we find that the court below properly granted appellee's motion to dismiss and therefore affirm the decision of the district court.

The following are excerpts from appellant's complaint filed in the district court:

"[Appellant] * * * while imprisoned in the California Men's Colony, * * * Los Padres, California, * * * went to the 'D' Quad Administration Office and lodged a complaint concerning a 'threat made against his life' by a fellow inmate, John Doe Carrello * * * *

"John Doe Carrello * * * was called to the 'D' Quad Administration Office and having been asked 'if he knew the plaintiff * * *,' replied in the negative, but [said] that 'You had better lock him up, because I am going to get him,' * * * *

"The * * * Lieutenant told * * * Carello, that he * * * 'wasn't going to lock up' the plaintiff * * * *

"On the following day * * * the plaintiff * * * was passing through the line along side of the steamtable getting his food * * * when suddenly he was sat upon by * * * Carrello * * * who * * * threw a pitcher of 'scalding hot coffee' into the face of the plaintiff * * * *

"Carrello * * * began and continued to beat * * * plaintiff with the empty coffee pot until * * * an officer * * * stopped the matter."

Appellant's complaint further alleged that—

" * * * as a direct consequence of the said defendants' * * * willful negligence in failing to exercise the authority vested in them as State Officials 'acting under color of

---

* Honorable Russell E. Smith, United States District Judge, Missoula, Montana, sitting by designation.

state law' to prevent the injuries * * * [to appellant] * * * in violation of the cruel and unusual punishments provisions of the Eighth via the Equal Protection and Due Process Clause of the Fourteenth Amendment to the United States Constitution * * * ",

appellant suffered certain damages.

The district court, in granting the motion to dismiss, gave two alternative grounds for its decision; that the complaint did not allege intentional conduct by the defendants, and second, that the conduct complained of did not violate any federally secured rights. The court held that at most the allegations made out an "unintentional common law tort."

Since Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), some courts, like the district court in the instant case, have held that unintentional conduct does not state a claim under section 1983. See United States ex rel. Gittlemacker v. Pennsylvania, 281 F. Supp. 175 (E.D.Pa.1968); Kent v. Prosse, 265 F.Supp. 673 (W.D.Pa.), aff'd, 385 F.2d 406 (3rd Cir. 1967). Another court has indicated that negligent conduct in the appropriate circumstances may support a claim under section 1983. See Huey v. Barloga, 277 F.Supp. 864 (N.D.Ill.1967). A close reading of the relevant portion of the *Monroe* opinion, set out here in the margin,[1] indicates that the Court was merely rejecting the proposition that "specific intent" to violate constitutional rights was required. The "natural consequences" test formulated by Mr. Justice Douglas apparently leaves open the question of the degree of culpability required

by section 1983. It may be that negligent conduct, in the appropriate circumstances, will support an action under section 1983. See Huey v. Barloga, *supra*. Mere negligent failure to act, standing alone, however, would seem insufficient.

In order to be actionable under section 1983, however, we believe that more than an isolated incident of negligent failure to protect must be alleged. The federal courts have stated on numerous occasions that absent unusual circumstances they will not intervene in the internal administration of state prison systems. See, *e. g.*, Stiltner v. Rhay, 371 F.2d 420 (9th Cir. 1967); United States ex rel. Lee v. Illinois, 343 F.2d 120 (7th Cir. 1965); Snow v. Gladden, 338 F.2d 999 (9th Cir. 1964). In Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal. 1966), the federal court did intervene in the administration of the California prison system. There the action, brought under section 1983, involved serious circumstances existing in the state prison for which the remedy of section 1983 was designed. No such circumstances are present here. No allegations of direct prison guard beating are made such as those found in Wiltsie v. California Department of Corrections, 406 F.2d 515 (9th Cir. 1968).

In addition to an allegation of the requisite degree of culpability, plaintiffs in section 1983 actions must show a violation of federally secured rights. Here appellant has alleged that his rights to equal protection of the laws and freedom from cruel and unusual punishment have been violated by state prison officials. While Monroe v. Pape, *supra*, eliminated the necessity of alleging specific intent to discriminate, compare Hoffman v.

---

1. "In the *Screws* case [Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L. Ed. 1495 (1945)] we dealt with a statute that imposed criminal penalties for acts 'wilfully' done. We construed that word in its setting to mean the doing of an act with 'a specific intent to deprive a person of a federal right' [citation omitted]. We do not think that gloss should be placed on § 1979 [designation of section 1983 under the Revised Statutes] which we have here. The word 'wilfully' does not appear in § 1979. Moreover, § 1979 provides a civil remedy, while in the *Screws* case we dealt with a criminal law challenged on the ground of vagueness. Section 1979 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." 365 U.S. at 187, 81 S.Ct. at 484.

Halden, 268 F.2d 280 (9th Cir. 1959), we think that more than an isolated incident of failure to protect is necessary to make out a violation of the equal protection clause. The equal protection clause forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated. It also forbids unequal enforcement of valid laws, where such unequal enforcement is the product of improper motive. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed.220 (1886); People v. Harris, 182 Cal.App. 2d Supp. 837, 5 Cal.Rptr. 852 (1960). In the factual surroundings of a prison it is thus necessary to show a bad faith oppressive motive in order to make a violation of the equal protection clause out of an isolated instance of failure to protect a prisoner from attack by a fellow inmate. No such bad faith motive appears in the instant case.

■ The Eighth Amendment prohibits the infliction of cruel and unusual punishment. This prohibition has been made binding on the states through the due process clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). While the exact definition of that term is unclear, three tests have been used to determine whether the conduct complained of constitutes cruel and unusual punishment. See Jordan v. Fitzharris, 257 F.Supp. 674, 679 (N.D.Cal. 1966). Is the conduct of such a character as to shock the conscience or violate fundamental fairness? Is the punishment greatly disproportionate to the offense for which it is imposed? Does the punishment go beyond legitimate penal aims? The conduct complained of in the instant case fails all three tests.

Having failed to allege any factual basis upon which a violation of federally secured rights can be made out, the motion to dismiss was properly granted, and the decision of the district court is therefore affirmed.